UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CE LINE ONE CORPORATION LIMITED f/k/a FIVE OCEANS TRADING ASIA LIMITED and DIPTSY MOLINA,<br><br>Plaintiffs,<br><br>v.<br><br>DARREN NEIL MASTERS; JONATHAN CHARLES GOLDSTEIN; and JONATHAN C. GOLDSTEIN, P.C.,<br><br>Defendants. | 24-CV-9889 (RA)<br><br>MEMORANDUM OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

Plaintiffs CE Line One Corporation Limited, f/k/a Five Oceans Trading Asia Limited ("CE Line") and Diptsy Molina filed this action against Defendants Darren Neil Masters, Jonathan Charles Goldstein, and Jonathan C. Goldstein, P.C., for their alleged involvement in a convoluted scheme to defraud Plaintiffs that resulted in them transferring $11,300,000 to Defendants. Given that a default judgment has now been entered against Masters, *see* Dkt. No. 132, the only claims remaining are those for conversion, fraudulent conveyance, civil conspiracy, aiding and abetting fraud, aiding and abetting breach of fiduciary duty and negligence against Goldstein and Jonathan C. Goldstein, P.C. (collectively, "the Goldstein Defendants"), and vicarious liability for unspecified torts as to Goldstein, P.C. Before the Court is the Goldstein Defendants' motion to dismiss. For the reasons that follow, the Court denies their motion in its entirety.

## BACKGROUND

### I. Alleged Scheme

The following facts are derived from the Complaint and are taken as true and construed in the light most favorable to Plaintiffs for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). This action arises from an investment made by Plaintiffs

into what they characterize as a "high yield" project involving an entity known as the "Surfside Trust" or the "Surfside Structure" that they were told would produce a 12% weekly return. Dkt. No. 1 ("Compl.") ¶¶ 17–18. Molina, who is originally from Greece and lives in Spain, owns the Hong Kong-based company, CE Line, formerly called Five Oceans, which appears to exist largely to manage her assets. *See id.* ¶¶ 1–2. Plaintiffs characterize Masters as a "career fraudster" who holds himself out to be a solicitor based in the United Kingdom as part of his scheme to lure unsuspecting victims to invest in projects "with extremely attractive returns." *Id.* ¶ 12. Once funds are transferred to him, Plaintiffs allege that he moves them out of the investors' control through one of his various shell companies—which include SCP SN Advisory, SN SCP LLC, Granite Investment Global BVI, and BBMR Consulting—and "dissipates the assets for his own personal benefit" by acquiring businesses, property, or settling his own debts. *Id.* ¶¶ 13–14.

Plaintiffs allege that on November 4, 2022, Diego Marmol Rojo, an acquaintance of Molina, introduced her to Masters, who presented them both with an opportunity to invest in the Surfside Trust. *Id.* ¶ 17. As part of their agreement, and at Masters' urging, Molina retained the British law firm, 7 Legal and Finance Limited ("7LF").[1] Jeremy Bennett, a solicitor and partner at the firm, handled the transfer of the $11,300,000 she ultimately pledged to the project. *Id.* ¶¶ 21–22, 26. Molina arranged for CE Line to transfer the funds to 7LF through three separate wire transfers to 7LF's bank account. *Id.* ¶¶ 25, 28. Concerned by a delay in processing the wire transfers, Molina eventually requested that Masters return the funds. *Id.* ¶ 30. Plaintiffs allege that Masters provided a record falsely suggesting that half the sum had been transferred back. *Id.* ¶¶ 31–32. Rather than returning the funds, Plaintiffs maintain that 7LF transferred them to an escrow account held by Goldstein, P.C.—the New York-

[1] Plaintiffs allege that the United Kingdom's regulatory agency, the Solicitors Regulation Authority, subsequently revoked 7LF's practicing certificate, preventing it from acting as a solicitor in England and Wales. *See* Compl. ¶ 23.

based law firm of solo practitioner Jonathan Charles Goldstein—without Molina's knowledge or consent, *id.* ¶¶ 4–7, 33, retaining just under half a million U.S. dollars for itself. *Id.* ¶ 34.

Molina continued to press Masters about the return of the funds, and he repeatedly assured her that they would be released in short order. Plaintiffs allege that Masters instructed Goldstein to email the law firm retained by Molina, Horowitz and Rubenstein, LLC ("H&R"), and state that his firm, Goldstein, P.C., was holding the funds in escrow for Masters and that Goldstein would release the funds upon further instructions. *Id.* ¶¶ 37–38. Upon receiving confirmation from Masters that he could release the funds, Goldstein emailed H&R with a disbursement form to initiate the transfer to H&R's IOLA account. *Id.* ¶ 39. The funds, however, were never received. *Id.* Plaintiffs claim that 7LF instead transferred $10,863,762.01 to Goldstein, P.C.'s bank account with Citibank, and that Goldstein then facilitated the transfer of the remainder to various individuals and companies across the US and UK. *Id.* ¶¶ 44–45.

## II. Procedural History

A year prior to filing the Complaint in this action, on November 28, 2023, CE Line filed a motion for discovery pursuant to 28 U.S.C. § 1782, with the stated goal of filing suit in England and Wales against Bennett, 7LF, and Masters (the "Discovery Application"). *See In re Application of CE Line One Corp. Ltd. for an Order Seeking Discovery Pursuant to 28 U.S.C. § 1782* (*In re CE Line Discovery Application*), No. 23-MC-461 (JMF), Dkt. Nos. 1 ("Mot. for Discovery"), 3 ("CE Line's Br."). CE Line sought an order authorizing discovery from Citigroup, Inc. and the corporate representative of Goldstein, P.C. Judge Furman, the judge to whom the Discovery Application was assigned, granted CE Line's application, authorizing the corporation's U.S. counsel to serve a subpoena on both parties. *See In re CE Line Discovery Application*, Dkt. No. 11 ("§ 1782 Order"). In the interim, on December 23, 2024, Plaintiffs filed this action against Defendants seeking $11.2 million in damages.

While the instant suit was proceeding before this Court, on July 11, 2025, the Goldstein Defendants (referred to as the "Goldstein Parties" in the proceeding before Judge Furman) filed a motion to quash the subpoenas authorized by Judge Furman, a motion for reconsideration of the § 1782 Order, and a motion for a protective order to prevent future "misuse" of discovery obtained pursuant to that order in a domestic proceeding rather than a foreign tribunal. *See In re CE Line Discovery Application*, Dkt. Nos. 13 ("Mot. for Reconsideration"), 14 ("Goldstein Discovery Br."). On December 2, 2025, Judge Furman denied the motion in its entirety, holding that the motion to quash the subpoenas was untimely and the motion for reconsideration was both untimely and meritless. *See In re CE Line Discovery Application*, Dkt. No. 24 ("Furman Mem. Opinion & Order") at 4–6. He noted that the "Second Circuit has held that 'Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise.'" *Id.* at 8 (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017)). Finding no "compelling legal or factual reason that would justify entry of a protective order," especially given the two years that had passed since the court's initial entry of the discovery order, he denied the Goldstein Parties' motion in its entirety and ordered CE Line to bring the decision to the attention of this Court, *id.* at 8–9, which it did, *see* Dkt. No. 107.

The Court has entered a judgment of default in favor of Plaintiffs against Defendant Masters as to all claims against him. Dkt. No. 132. Thus, remaining before the Court is the Goldstein Defendants' motion to dismiss pursuant to Rule 12(b)(6). They assert (1) that Plaintiffs cannot impute liability to Goldstein, as an individual, based solely on his ownership of Goldstein, P.C., *see* Dkt. No. 96 ("Goldstein Defs.' Br.") at 3; and (2) that Plaintiffs' conspiracy claim against the Goldstein Defendants must be dismissed as duplicative of their aiding and abetting fraud claim, *id.* at 6. For the reasons that follow, the Court denies the motion.

## LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court "construe[s] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).[2]

"To survive a 12(b) motion, a plaintiff must allege facts that, accepted as true, make out the elements of a claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001). Failure to adequately allege "an essential element" of a claim is grounds for dismissal under Rule 12(b)(6). *Schneider v. Pearson Educ., Inc.*, 2013 WL 1386968, at *5 n.6 (S.D.N.Y. Apr. 5, 2013). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

### I. Claims Against the Goldstein Defendants

The Goldstein Defendants seek dismissal of various claims against them. Specifically, they argue (1) that Plaintiffs improperly seek to impute liability to Goldstein, the owner of the law firm

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and omissions and adopt alterations.

Goldstein, P.C., without successfully piercing the corporate veil; and (2) that the conspiracy claim against the Goldstein Defendants must be dismissed because it is duplicative of the aiding and abetting fraud claim. Plaintiffs counter that veil piercing is unnecessary to plausibly allege Goldstein's liability and that the conspiracy claim is not duplicative because it rests on Masters' fraudulent conduct in addition to that of the Goldstein Defendants. *See* Dkt. No. 104 ("Pls.' Opp'n").

**A. Goldstein's Individual Liability**

The Goldstein Defendants first argue that Plaintiffs' claims against Goldstein as an individual—aiding and abetting fraud, aiding and abetting breach of fiduciary duty and negligence—must be dismissed because they have not pierced the corporate veil so as to impose liability on Goldstein in his capacity as a corporate officer. *See* Goldstein Defs.' Br. at 3–6. Plaintiffs respond that veil piercing is unnecessary because they have more than plausibly alleged Goldstein's liability for his individual torts. Pls.' Opp'n at 4–11. The Court agrees and therefore does not reach the question of whether they have made a sufficient showing as to the piercing of the corporate veil.

"[I]t is well-established that under New York law, piercing the corporate veil is not required to hold a corporate officer liable for his company's torts: a corporate officer who controls corporate conduct and thus is an active individual participant in that conduct is liable for the torts of the corporation." *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 163 (S.D.N.Y. 2010), *aff'd in part, appeal dismissed in part*, 406 F. App'x 557 (2d Cir. 2011). Accordingly, if a corporate officer commits or participates in a tort, "even if it is in the course of his duties on behalf of the corporation," he may still be held liable. *Lopresti v. Terwilliger*, 126 F.3d 34, 42 (2d Cir. 1997).

Although Goldstein, P.C. is structured as a professional corporation, Goldstein may still be held individually liable for his own tortious conduct. Plaintiffs allege several facts that help establish individual liability. First, after Plaintiffs became aware that 7LF allegedly transferred the funds to Goldstein, P.C.'s escrow account, they began requesting their return. *See* Compl. ¶¶ 33–36. Masters

reassured them that the funds would be remitted in short order. *Id.* ¶ 37. Plaintiffs further allege that Goldstein, "allowing Masters to control the content of his communications with Molina and H&R," sent an email to H&R that was initially drafted by Masters, confirming that Goldstein was holding the funds in his firm's escrow account. Compl. ¶¶ 38, 101. Shortly thereafter, Goldstein sent H&R a "Disbursement Form," stating that he would transfer the funds to H&R's IOLA account. *Id.* ¶¶ 39, 95. The funds never appeared in either H&R's or Plaintiffs' accounts. *Id.* ¶¶ 38–39.

Plaintiffs further allege that Goldstein, in concert with Masters, "repeatedly and falsely emailed Molina assuring her that the Subject Funds would be returned to her," *id.* ¶ 40, "despite Goldstein's knowledge that the escrow account had been depleted," *id.* ¶ 95. Instead of returning the funds as promised (with the exception of $100,000 to H&R's IOLA account), Plaintiffs claim that Goldstein transferred the remaining funds, totaling upwards of $10.8 million, to various entities and individuals, many of whom they allege paid for Masters' "own personal and business ventures." *Id.* ¶¶ 43–46. Plaintiffs rely on the records they obtained pursuant to the Discovery Application to further assert that Goldstein failed to conduct any due diligence on Masters and the wire transfers he instructed him to execute on his behalf. *Id.* ¶ 47. They accuse him of "blindly compl[ying] with all of Masters' instructions," and maintain that he failed to inquire as to the origins of $10.8 million sent to Goldstein, P.C. by 7LF. *Id.* ¶¶ 46–49, 101. These actions, they allege, in concert with Masters' behavior, "allowed Defendants to deprive [Plaintiffs] of at least $11,200,000." *Id.* ¶ 96. Taken together, these allegations plausibly support Plaintiffs' assertion that Goldstein individually participated in the fraudulent activity. Accordingly, Plaintiffs may pursue their claims against Goldstein based on his alleged personal participation without piercing the corporate veil. The motion to dismiss the claims as to Goldstein, the individual, is therefore denied.

**B. Duplicative Claim**

Next, the Goldstein Defendants argue that Plaintiffs' conspiracy to commit fraud claim must also be dismissed because it is duplicative of their aiding and abetting fraud claim. *See* Goldstein Defs.' Br. at 6–7. Plaintiffs respond that the two claims are sufficiently distinct because in the conspiracy claim, they allege Masters' overt acts in furtherance of the conspiracy as well as "the meeting of the minds" between Defendants. *See* Pls.' Opp'n at 14–15. By contrast, they maintain the aiding and abetting fraud claim focuses solely on the Goldstein Defendants' actions. *Id.* Although this is a close question given the substantial overlap between the facts alleged for both claims, the Court ultimately agrees with Plaintiffs, and declines to dismiss the claim of conspiracy as duplicative, at least at this stage.

"Under New York law, a cause of action for conspiracy may be alleged to connect a defendant to a sufficiently pleaded tort claim, but plaintiffs may not reallege a tort asserted elsewhere in the complaint in the guise of a separate conspiracy claim." *Carbon Inv. Partners, LLC v. Bressler*, 2021 WL 3913526, at *9 (S.D.N.Y. Sept. 1, 2021). As such, "a cause of action for civil conspiracy that offers no new allegations beyond those alleged in support of other tort claims alleged elsewhere must be dismissed as duplicative." *Id.* The Second Circuit, however, has held that a conspiracy may be properly alleged "for the purpose of showing that a wrong was committed jointly by the conspirators and that, because of their common purpose and interest, the acts of one may be imputed to the others." *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981). The fundamental question is thus whether "in addition to [the] conspiracy," the plaintiff also alleges "independent overt acts undertaken in pursuit of that conspiracy." *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, 2007 WL 1040809, at *25 (S.D.N.Y. Apr. 4, 2007).

Although the two challenged claims undoubtedly overlap, the conspiracy claim is not merely a restatement of the aiding and abetting claim, as it is in many of the cases on which the

Goldstein Defendants rely. *See, e.g.*, *Fezzani v. Bear, Stearns & Co.*, 2023 WL 4625544, at *4 (S.D.N.Y. July 19, 2023) (finding that the plaintiff's conspiracy claim was duplicative of its aiding and abetting claim where the only difference was the allegation of an "explicit express agreement to join the conspiracy," which merely reiterated an element of conspiracy); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 2016 WL 5719749, at *7 (S.D.N.Y. Sept. 29, 2016) (dismissing a conspiracy claim as duplicative where it rested on the same conduct alleged in support of the aiding and abetting claim). Here, by contrast, the conspiracy claim does more than allege an agreement or reiterate the acts the Goldstein Defendants took at Masters' urging. It also identifies numerous overt acts undertaken by Masters in furtherance of the alleged conspiracy that are not alleged as part of the aiding and abetting claim—in addition to recounting the conduct by the Goldstein Defendants that purportedly facilitated those acts. Therefore, although the conspiracy and aiding and abetting claims do overlap considerably, the Court cannot conclude, at the pleading stage, that the conspiracy claim merely repackages the aiding and abetting claim. The conspiracy claim thus survives.

**CONCLUSION**

For the foregoing reasons, the Court denies the Goldstein Defendants' motion to dismiss in its entirety. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 95. Within thirty (30) days of this decision, the parties shall provide a status letter proposing next steps in this action.

SO ORDERED.

Dated: September 23, 2026
New York, New York

Ronnie Abrams
United States District Judge